THIRD DIVISION

June 14, 2000

No. 1-97-4454

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

MARVIN REEVES,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 88 CR 15409

Honorable

John E. Morrissey,

Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This case comes to us after a second jury trial in which defendant Marvin Reeves was convicted of five counts of first degree murder and five counts of aggravated arson.  He was sentenced to natural life without parole.  Defendant's first trial resulted in a guilty verdict, but on appeal we reversed his convictions and remanded for a new trial.  We held then that defendant's right to confront and cross-examine witnesses against him was violated by the admission, through the testimony of Willie Williams, of codefendant Ronald Kitchen's statement incriminating defendant.
  
People v. Reeves
, 271 Ill. App. 3d 213, 218-22 (1995) (
Reeves I
).

The victims,  Debbie Sepulveda, Rosemary Rodriguez and three children, were found on July 27, 1988, in Debbie's burning house at 6028 South Campbell Avenue.  Autopsies established that Rosemary had been strangled, and Debbie and the children had been suffocated before the fire was ignited.

Victor Guajardo, Jr., the victims' next-door neighbor and 12 years old at the time of the murders, testified that he saw a yellow two-door car parked in front of his house about 5 or 6 p.m. on July 26, 1988.  The car was gone at 7 p.m.  He later identified a photograph of defendant's car as the one parked in front of his house.

Detective Craig Cegielski found a shoe box with hundreds of small manila envelopes, commonly used to package narcotics, on the workbench in the basement of Debbie's house after the fire.  Detective Cegielski testified that he did not recover narcotics from the scene, but other officers found narcotics residue.

Two dogs trained to respond to the odor of narcotics "alerted" to the presence of narcotics in the rear bedroom and the workbench in the basement.

Detective Daniel McInerney, a bomb and arson expert, testified the fire had been intentionally hand-ignited in each bedroom and at the top of the basement stairs.  Though there was no evidence of an accelerant, he testified it was possible that an accelerant had been used but had burned or washed away.

Police officers found a lighter fluid container and a gas can in the trunk of defendant's car in August 1988.  

Willie Williams testified he had known defendant for about 10 years before the murders.  From 1986 to 1988, defendant and Kitchen paid Williams to drive them around the city to drop off cocaine and pick up money.  During that time, Williams met Debbie and Rosemary, whom he knew as "Mary," when defendant and Kitchen delivered cocaine to them, often at Debbie's house on South Campbell.  Williams also met Diane Rivera, who received cocaine from defendant and Kitchen.  In November or December 1987, Williams drove defendant and Kitchen to Debbie's house, where defendant gave her cocaine and told her that she owed him money for the cocaine.  In May 1988, defendant told Debbie that he "would do something if they didn't pick up their payments."

Williams pleaded guilty to a burglary charge in 1988 and was sentenced to a three-year prison term.  He spoke to both defendant and Kitchen on the telephone while he was incarcerated.

The prosecutor asked Williams about a telephone conversation he had with defendant on August 6, 1988.  The prosecutor asked, "Did you have occasion to ask [defendant] a question at that time without telling us what that question was?"  Williams responded that defendant told him that he did not know "why Ronnie would be saying that on the phone because he get caught he would kill Ronnie too."  Defendant then said, "That's how Jeff Fort got caught, by talking on the phone."  He also said that "if Diane didn't pick up her payments the same that happened to Debbie and Mary was going to happen to her."  Finally, defendant said, "Ain't no stoppin' us now."

Defendant's first issue on appeal is that his sixth amendment right to confront witnesses was violated by the admission of Williams' testimony and the State's argument, which raised the inadmissible inference that Kitchen implicated defendant.  Use of a nontestifying codefendant's inculpatory statement violates a defendant's right to confront and cross-examine witnesses against him.  
Bruton v. United States
, 391 U.S. 123, 127, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1620, 1623 (1968). 

 "[T]estimony that does not reveal the substance of a nontestifying codefendant's statement may be presented to show the steps taken in the investigation or for other reasons, even though the jury could infer from the testimony that a nontestifying third party implicated the defendant, and that such testimony may be argued to the jury in closing argument."  
People v. Bounds
, 171 Ill. 2d 1, 55 (1995).

In 
People v. Fauntleroy
, 224 Ill. App. 3d 140 (1991), the nontestifying codefendant made a statement.  The defendant denied involvement in the offense, so the police confronted him with the codefendant's statement.  The defendant did not believe the statement was real, so police brought in the codefendant, who said, "'Yes it is, yes,'" and, "'Tell the truth, I did.'" 224 Ill. App. 3d at 145.  The court held that no 
Bruton
 violation occurred because no part of the codefendant's statement was revealed.  
224 Ill. App. 3d at 144-48.  

In this case, Williams' testimony did not include the substance of Kitchen's statement.  Williams did not testify that his conversation with Kitchen prompted him to confront defendant.  Williams testified that he was in the habit of telephoning both Kitchen and defendant.  Then he testified to defendant's statements during one conversation, in which defendant said that he "don't know why Ronnie would be saying that on the phone, because he get caught he would kill Ronnie too."

Defendant argues that the only inference from this testimony is that Williams spoke to Kitchen, who implicated defendant in the murders.  Defendant claims that "the violation occurs not only where the substance of the statement is explicit, but also where the context makes it impossible for the jury to conclude that the co-defendant's implicit statement was anything other than a statement that defendant committed the crime."  Defendant cites 
People v. Cruz
, 121 Ill. 2d 321, 331 (1988), in support of this proposition.  But the facts in 
Cruz
 do not apply here.  In 
Cruz
, the supreme court held that the trial court improperly admitted the codefendant's statement that he had committed the crime with "friends."  The court found that the jury could only have concluded that the "friends" included defendant.  There, the codefendant's actual statement, though redacted, was admitted.  
Cruz
, 121 Ill. 2d at 331.

A careful reading of the record in 
Reeves I
 and the case before us is more to the point.  In 
Reeves I
,  271 Ill. App. 3d at 220-21, Williams testified that he spoke to Kitchen and the next day called Detective John Smith to tell him that a couple of his friends had killed the victims.  Then Williams called defendant and told him that Kitchen had reported what Kitchen and defendant had done.  Though Williams did not testify directly to the substance of his conversation with Kitchen, the prosecutor told the jury during opening statement: "'And Williams [
sic
] tell you that when he called the defendant up, he said hey, I talked to Ronnie a couple of days ago, he told me you and him killed Debbie and Mary and the kids because they were behind in their payments.'"  
Reeves I
, 271 Ill. App. 3d at 220.  The prosecutor referred to the conversation several more times during closing argument.  We found a 
Bruton
 violation in 
Reeves I
 because the substance of Kitchen's statement was repeatedly brought to the jury's attention and no limiting instruction was given.  
Reeves I
, 271 Ill. App. 3d at 220-21.  We said in 
Reeves I
:  "Taking into consideration the entire record, in the instant case, we have no doubt that the
 combined effect of Williams' testimony and the prosecutor's arguments
 conveyed to the jury the substance of Kitchen's out-of-court statements which clearly implicated defendant in the murders."  (Emphasis added.)  
Reeves I
, 271 Ill. App. 3d at 222.

Here, there was no such "combined effect."  Unlike 
Reeves I
, Williams did not testify that he spoke to Detective Smith or that he told defendant what Kitchen had said.   More importantly, the prosecutor did not argue in opening statements or closing argument that Williams' testimony would make clear that Kitchen had implicated defendant.  The only reference to Kitchen in connection with Williams' conversation with defendant came from defendant himself. Defendant has not claimed error in the admission of his own words through the mouth of Williams.  "The Illinois Supreme Court has defined an 'admission' as 'a statement or conduct from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow.'  [Citation.]  Such admissions are not objectionable under the rule against hearsay."  
People v. Ervin
, 297 Ill. App. 3d 586, 590 (1998).

Because Williams did not testify to the content of his conversation with Kitchen, the State did not improperly refer to the conversation in argument, and the only reference to such statements came from defendant himself, we find no 
Bruton
 violation.

Defendant next argues that the trial court erred in giving an accountability instruction where the evidence did not show that another person was involved or that defendant was accountable for another's actions.          

A person is legally accountable for the conduct of another when, either before or during the commission of an offense and with the intent to promote or facilitate its commission, he solicits, aids, abets, agrees or attempts to aid the other in the planning or commission of the offense.  720 ILCS 5/5-2(c) (West 1998).  We will not disturb the trial court's decision to give a jury instruction on accountability absent a clear abuse of discretion.  
People v. Jones
, 175 Ill. 2d 126, 131 (1997).  "Very slight evidence upon a given theory of a case will justify the giving of an instruction."  
Jones
, 175 Ill. 2d at 132.  "Evidence, however slight, on accountability along with evidence of action as a principal offender is sufficient to support both instructions regardless of whether both theories were advanced in the State's case in chief."  
People v. Batchelor
, 202 Ill. App. 3d 316, 331 (1990).  Though a defendant may be guilty of direct participation in a crime, an instruction on accountability is proper if there was also evidence that defendant aided another in the commission of the crime.  
People v. Stark
, 33 Ill. 2d 616, 622 (1966).  

In this case, the State presented evidence of Ronald Kitchen's connection to defendant and the victims.  Williams testified that defendant and Kitchen conducted their drug business together.  He also testified that defendant and Kitchen were involved in drug transactions with Debbie and Rosemary at Debbie's house.  The State argued before the trial court that it is unlikely that a single person, without an accomplice, could have killed two adults and three children.  The trial court found this evidence sufficient to support an accountability instruction.  We find no abuse of discretion.

Defendant's third argument is that the trial court erred in allowing the State to introduce evidence that trained dogs detected the odor of narcotics.   Defendant failed to object to this evidence at trial or in a posttrial motion as required by the Code of Criminal Procedure of 1963.  725 ILCS 5/116-1(b) (West 1998).  "[F]ailure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal."  
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  Defendant argues that we should review this issue as plain error because evidence of defendant's guilt was closely balanced.  
People v. Herrett
, 137 Ill. 2d 195, 209 (1990); 134 Ill. 2d R. 615(a).
  
A "closely balanced" case is one where the outcome of the case would have to be different had the impropriety not occurred.  
People v. Young
, 128 Ill. 2d 1, 47 (1989).  The evidence here is not closely balanced.  Compelling circumstantial evidence supported defendant's conviction: defendant had a history of drug transactions with the victims and had threatened them; his car was seen outside the victims' house the evening of the murders; and a lighter fluid container and gas can were found in defendant's trunk after the murders.  Though the evidence was circumstantial, there was no evidence introduced, direct or circumstantial, from which alternative inferences could be drawn.  "Closely balanced" assumes the presence of some evidence from which contrary inferences can be drawn.  For example, in 
People v. Howery
, 178 Ill. 2d 1, 47-48 (1997), also a murder and arson case, the supreme court did not find the evidence closely balanced where "nothing in the record" supported defendant's theory that others started the fire, but there was "clear evidence" that defendant had a motive to set the fires and had made threats several days before the offense.  In contrast, in 
People v. Shelton
, 303 Ill. App. 3d 915, 918 (1999), we did find the evidence to be closely balanced where there was some evidence that Shelton was driving under the influence of drugs, including his failure of a field sobriety test and his statement that he was "on Tylenol 3 with codeine," but no chemical tests were performed.

We may also apply the plain error rule if the error is so fundamental and of such magnitude that the defendant was denied a fair trial.  
Herrett
, 137 Ill. 2d at 210.  

The detection of narcotics by a trained dog is a permissible method of establishing probable cause.  
People v. Campbell
, 67 Ill. 2d 308, 315 (1977).  Defendant cites 
People v. Cruz
, 162 Ill. 2d 314 (1994), which states that "bloodhound evidence is inadmissible to establish any factual proposition in a criminal proceeding in Illinois."  
Cruz
, 162 Ill. 2d at 369-70.  But 
Cruz
 and the cases it cites refer exclusively to bloodhound evidence used to track people.  Unlike 
Cruz
, this case does not address evidence of bloodhound tracking.

Defendant also cites 
People v. Acri
, 277 Ill. App. 3d 1030, 1034 (1996), an arson case.   The 
Acri
 court barred evidence of an arson investigation dog's alerting to the presence of accelerants because it was uncorroborated by laboratory analysis.

Acri
 does not apply here.  The dog-sniff evidence in 
Acri
 was offered to support an element of the offense, arson.  Here, the evidence that dogs alerted to the presence of narcotics in the victims' house was introduced, not to support an element of the offense, but to corroborate Williams' testimony that defendant and the victims engaged in drug transactions.    The evidence also corroborates the testimony of Detective Cegielski, who testified that the envelopes found in the basement were commonly used to package narcotics.  The admission of this evidence did not deny defendant a fair trial.

Defendant argues that his sixth amendment right to an impartial jury was denied when the trial court failed to reopen 
voir
 
dire
 when a juror expressed doubt about her ability to be impartial.  The disposition of this issue compels us to cite the record in some detail.

  
 Juror Novilas testified during 
voir
 
dire
 that she worked with lawyers who practiced civil law; that she had been a witness to a drunk driving accident and testified in the civil suit against the driver, but was dissatisfied with the settlement reached in the case; and that she had been the victim of an attempted rape in which the offender was never apprehended.

"[THE COURT]:  Is there anything about the incident which will prevent you from rendering a fair verdict?

A.  No.  But I could try not to let it affect me.

Q.  As I have been saying to everybody now, Mr. [
sic
] Novilas, your duty as a juror will be to render a fair, unbiased, unprejudiced decision not favoring one side or the other, but based only on the law and the evidence.  Can you do that?

A.  I could try. 

***

[DEFENSE COUNSEL]:  The fact that there are five victims, three kids and two women, would that in any way prevent you from giving [defendant] a fair and impartial trial?

A.  No.

***

Q.  The fact that the photographs are very gruesome, would that in any way prevent you from giving [defendant] a fair and impartial trial?

A.  No."

After the jurors were sworn, the trial judge saw that juror Novilas looked "somewhat emotional."  He reopened 
voir
 
dire
.

"THE COURT:  Thank you.  Thank you.  Folks, we will excuse you until tomorrow.  The young lady from Arthur [Andersen], is there something wrong?

A.  I really don't want to do this especially with the whole like man attacking women.  I don't like the whole idea of trial.  But I understand that.  I can't answer the question that you keep posing because that's a whole different issue.

THE COURT:  Obviously nobody's heard any evidence, including me.  And how you might personally react is really not that material as long as you follow the written instructions and the oral instructions that I will give you, and based on those objective standards decide this case.  You know, it's impossible to try these things in a vacuum.

A.  See, I know.  I understand.  I don't think anybody can be objective.  You cannot judge somebody objectively.  I think that's impossible.  But just there is nothing I can do about it.

THE COURT:  Well, the question is can you for this week be a fair and impartial juror?

A. I'll try.  I can't say I would succeed.

THE COURT:  Well, we will see you in the morning.  Keep in mind some of 
writings of, I don't know whether you're familiar with Douglas Kmiec from Notre Dame law school who writes a lot about this system.  I'm not asking that you go and review his column.  He's very objective and has a very objective view point towards this system.

A.  See, I disagree.

THE COURT:  We will see you all in the morning, folks.  It's difficult.  I'm not saying it isn't.  But we just ask that you–

[DEFENSE COUNSEL]:  Judge, can we have a sidebar?

THE COURT:  Be fair jurors.  For the record the dialogue with a juror who was just sworn, what is your name again?

A.  Venta Novilas."

The trial judge dismissed the jury and then spoke to the attorneys.

"[DEFENSE COUNSEL]: Judge, could you voir dire her a little bit more because when I asked her, I asked her and we went over this and then all of a sudden when she got selected she became distraught and said she couldn't.

THE COURT:  Well, here's my feeling, and it's based on my experience as a judge.  I think that she answered all the questions forthrightly, but for some reason in the back of her mind she felt she would not be accepted as a juror, and much to her surprise and perhaps chagrin she was accepted.  She looked kind of emotional.  That's why I singled her out.

But what she has said to me subsequent to my asking questions about, you know, the emotional look that she just imparted two minutes ago, does not give me any reason to excuse her or ask any further questions.  I think she's stating normal reservations, normal feelings.  And as far as I'm concerned she is on the jury, [defense counsel].  I won't ask her further questions."

A trial court's determination that a particular juror possesses the requisite impartial state of mind will not be disturbed on review unless it is manifestly erroneous.  
People v. Cole
, 54 Ill. 2d 401, 415 (1973).  A potential juror's remarks must not be reviewed in isolation but considered as a whole.  
People v. Pitsonbarger
, 142 Ill. 2d 353, 386 (1990).  A trial court is not required to dismiss a juror who expresses doubt about her ability to be impartial.  
Pitsonbarger
, 142 Ill. 2d at 386; 
People v. Gaines
, 88 Ill. 2d 342, 356 (1981).

Here, both defense counsel and the trial judge questioned the juror during 
voir
 
dire
 about her ability to be impartial.  When the judge noticed that she appeared "emotional" after the jury was sworn, he questioned her further.  We agree with the trial court that juror Novilas displayed normal reservations about the objectivity of the jury system as a whole.  When she was asked whether the particulars of this case would prevent her from being impartial, she unequivocally answered no.  The trial court's determination was not manifestly erroneous under the guidance we find in 
Cole
 and 
Pitsonbarger
.

Defendant next argues that evidence of earlier crimes, especially Williams' testimony that defendant stole cars and sold drugs, was irrelevant and prejudicial and should not have been admitted.

The trial court denied defendant's motion 
in
 
limine
 to bar Willie Williams from testifying about car thefts and drug trafficking.  The court found: 

"As far as this Court is concerned, the evidence of other crimes doesn't come in to show that [defendant] is a criminal, only that he acted with knowledge and intent due to the prior dealing with the victims and Williams and Kitchen, confederates.  It also inferentially skirts on 
modus
 
operandi
, if you will."

The admission of other crimes evidence is within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion.  
People v. Illgen
, 145 Ill. 2d 353, 364 (1991).  Evidence of other crimes is admissible if it is relevant for a purpose other than to show a defendant's propensity to commit crime.  
Illgen
, 145 Ill. 2d at 364.  Other crimes evidence is admissible to show, among other things, 
modus
 
operandi
, motive, knowledge and defendant's attitude toward the victim.  
People v. Kimbrough
, 138 Ill. App. 3d 481, 484-85 (1985).

Williams testified about his relationship to defendant and Kitchen as their driver during their drug sales and about his knowledge of defendant's car.  Most importantly, he testified about defendant's relationship with the victims in the course of their drug business.  The evidence of the victims' connection to defendant's drug business, especially Williams' testimony that defendant told Debbie that he "would do something if they didn't pick up their payments," provided evidence of defendant's knowledge, motive and intent.

The trial court also gave the jury the following limiting instruction: "When a witness says he was involved in the commission of a crime with the defendant the testimony of that witness is subject to suspicion and should be carefully examined in light of the other evidence in the case."  A limiting instruction "substantially reduce[s] any prejudicial effect created by the admission of the prior-offense evidence."  
Illgen
, 145 Ill. 2d at 376.  The trial court did not abuse its discretion in admitting the other crimes evidence, circumscribed by the limiting instruction.

Finally, defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt.

The standard of review is whether, after viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt."  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  A conviction may be based solely on circumstantial evidence.  
People v. Robinson
, 14 Ill. 2d 325, 331 (1958); 
People v. Locascio
, 106 Ill. 2d 529, 537 (1985).

The evidence at trial showed that the victims sold drugs for defendant and Kitchen.  When they fell behind in their payments, defendant told Debbie he "would do something if they didn't pick up their payments."  Two trained dogs positively reacted to the presence of drugs in the victims' house, in Rosemary's bedroom and on the basement workbench.  Police found a large quantity of small manila envelopes on the workbench, as well as narcotics residue in the house.

The victims' neighbor saw defendant's car parked near their house on the evening of the murders.  After the murders, police found a lighter fluid container and a gas can in the trunk of defendant's car.  Detective McInerney, a bomb and arson expert, testified that, though tests did not show the use of accelerants in setting the fire, accelerants could have been used and then burned or washed away.

Finally, Williams testified to a conversation with defendant shortly after the murders in which defendant said that he did not know "why Ronnie would be saying that on the phone because he get caught he would kill Ronnie too."  Defendant also said, "That's how Jeff Fort got caught, by talking on the phone," and that "if Diane didn't pick up her payments the same thing that happened to Debbie and Mary was going to happen to her."

We will not retry the defendant.  
Collins
, 106 Ill. 2d at 261.  It is within the province of the trier of fact to determine credibility and resolve inconsistencies in the testimony.  
People v. Purnell
, 126 Ill. App. 3d 608, 620 (1984).  The evidence was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt.

The judgment of the circuit court is affirmed.

Affirmed.

CERDA and BURKE, JJ., concur.