NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231001-U

NO. 4-23-1001

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| ROBERT G. MANDRELL, | ) | No. 21CF31 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The State proved defendant guilty of resisting a peace officer beyond a reasonable doubt, and there was no plain error with respect to the trial court's questioning of the jury.

¶ 2     In this direct appeal, defendant Robert G. Mandrell appeals his conviction of resisting a peace officer (720 ILCS 5/31-1(a) (West 2020)). He argues that the evidence supporting his conviction was insufficient and that the trial court improperly admonished the venire, resulting in plain error. For the reasons that follow, we affirm.

¶ 3                               I. BACKGROUND

¶ 4     On a December evening in 2020, Officer Cristopher Collins initiated a traffic stop in Lincoln, Illinois. The events that followed that traffic stop led to defendant facing a two-count information for resisting a peace officer. The State proceeded to a jury trial on only the

misdemeanor count of resisting a peace officer that alleged defendant knowingly resisted arrest when he "pulled away" from Collins "when told to put his arms behind his back."

¶ 5                                          A. Jury Selection

¶ 6            During *voir dire*, the trial court began to admonish the venire of what is commonly referred to as the *Zehr* principles (see *People v. Zehr*, 103 Ill. 2d 472 (1984)), as codified in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The venire was seated in a two-row jury box. Relevant on appeal, the court asked the first panel of 12 prospective jurors whether each understood the rule of law that the defendant was presumed innocent until proven guilty beyond a reasonable doubt. The court then went juror by juror, starting in the back row, and obtained a response from each. After two prospective jurors answered "yes," another, prospective juror Ahn, answered "no," and further explained that she had difficulty understanding English. The record demonstrates the court went on to obtain "yes" answers from 5 other prospective jurors, leaving 4 of the 12 prospective jurors unaccounted for.

¶ 7            The trial court then asked whether the prospective jurors accepted that same rule of law. In the record, the court reporter changed the method of notation from recording individual responses to the question from the venire to memorializing the answers in a global fashion ("All answered, Yes, but [prospective juror] Ahn."). The court then asked whether the venire disagreed with the rule of law, and the record states, "All answered, No, but [prospective juror] Ahn." The court followed the same procedure, with the same result, for the remaining three principles listed in Rule 431(b). Prospective juror Ahn was excused for cause, while 8 of the 11 on the venire were empaneled on the jury.

¶ 8                                          B. Jury Trial

¶ 9            At trial, the State called Collins and Sergeant Shawn Pettit to testify.

¶ 10 Collins testified that while on patrol in uniform and in a marked squad car, he witnessed a sports utility vehicle (SUV) that failed to signal at the required distance before turning and failed to come to a complete stop before turning at a red traffic light. He conducted a traffic stop of the SUV and encountered defendant, who was driving the vehicle with two passengers. Advising that he was a police officer in the city of Lincoln, Collins explained to defendant the reason for the stop and requested certain documentation. While at the driver's side window of the SUV, Collins detected the odor of cannabis. He returned to his squad car, ran the information provided through dispatch, and called for backup because he planned to search the SUV based on the probable cause the odor of cannabis provided. Pettit arrived on the scene, and Collins explained the situation to him.

¶ 11 When Collins returned to the driver's side window of the SUV, he asked defendant to step out of the vehicle, which he did, and the two continued their conversation towards the rear driver's side of the SUV, in front of Collins's squad car. Collins asked defendant when he last smoked cannabis and whether there was any cannabis in the vehicle. Defendant told Collins that he had smoked cannabis earlier that morning and that there was cannabis in the SUV. Defendant explained that he used cannabis for medical purposes, although he did not have a medical card, and that he would retrieve the cannabis for Collins so there was no need to search the vehicle. Collins responded that despite the offer, he was going to search the vehicle. Defendant became agitated and fidgety, telling Collins he could not search the car because he did not have probable cause.

¶ 12 At that point, Collins decided "to physically detain [defendant] by placing him in handcuffs behind his back." Collins grabbed defendant's right arm, but defendant pulled away by bringing his arm closer to his body. Collins then pushed defendant against the SUV and attempted

to get defendant's arms behind his back, but defendant "continued to refuse to give [Collins] his arms," so Collins took defendant to the ground. Defendant landed on his stomach with his arms underneath him, preventing Collins from putting him in handcuffs. Once on the ground, defendant "had his arms hid in underneath his body" and would not give Collins his hands. Once Pettit came to assist and threatened to tase defendant, Collins was able to secure defendant's arms behind his back. Collins believed the entire incident from the moment he placed hands upon defendant to when he was in handcuffs, lasted "roughly two minutes or so."

¶ 13        The dash cam video from Collins's squad car was then introduced as State's exhibit A and published to the jury. The recording provided a clear view of the entire encounter. The jury viewed the beginning of the traffic stop and discussion between defendant and Collins, and then the prosecution fast-forwarded to where Collins asked defendant to step out of the SUV. Defendant complied, and an approximately 40-second conversation ensued. Relevant here, defendant acknowledged that there was cannabis in the vehicle but asked Collins not to confiscate it; he said he would give it to Collins but was not giving permission to search the vehicle. Collins responded that if the cannabis was not in the proper container, he was going to confiscate it and that he would search the vehicle because he had probable cause. Defendant again stated he was going to give Collins the cannabis so he did not have to search the vehicle, and Collins replied that he still had to search the vehicle, to which defendant stated, "No you don't." Collins then grabbed defendant by the arm while stating, "Okay, go ahead and put your hands behind your back, if you're going to give me problems." Defendant pulled away from Collins and moved toward the SUV, stating, "No, no, no, no." Collins then took defendant to the ground and got on top of him as another officer ran over, taser drawn, to assist. Defendant landed on his arms, and Collins told defendant to place his hands behind his back. Initially, defendant did not comply, instead asking whether the

- 4 -

occupants of the SUV were recording the interaction. Collins eventually secured defendant's left arm from under his body and placed him in handcuffs.

¶ 14        On cross-examination, Collins agreed that when he explained the vehicle was going to be searched, defendant was initially bargaining, not resisting arrest, but also stated defendant was "not compliant." When asked why he put his hands on defendant, Collins stated it was for officer safety due to defendant's "increased agitation, his verbal noncompliance as to telling me, no, I'm not searching his vehicle." When they went to the ground, defendant was still resisting and holding his arms under his body.

¶ 15        Pettit testified he was at the scene but did not witness the beginning of the encounter, as he was on the other side of the vehicle observing the other passengers. He heard Collins saying something to the effect of, "quit pulling away," and he moved to the driver's side of the vehicle, where he saw Collins and defendant "wrestling on the ground." Defendant appeared to be resisting arrest.

¶ 16        The State rested, and the trial court denied defendant's motion for a directed verdict. Defendant declined to testify, and the defense rested. The jury returned a guilty verdict, and the trial court denied defendant's motion for a new trial, sentencing him to, among other things, 18 months of probation.

¶ 17        This appeal followed.

¶ 18                          II. ANALYSIS

¶ 19        On appeal, defendant argues that the evidence was insufficient to support his conviction and that the trial court erred in admonishing jurors of the *Zehr* principles codified in Rule 431(b).

¶ 20                    A. Sufficiency of the Evidence

¶ 21        We first address defendant's argument that the evidence was insufficient to show he knowingly resisted arrest.

¶ 22        When considering a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Gray*, 2024 IL 127815, ¶ 20. We will not substitute our judgment for that of the jury and will not reverse the judgment unless the evidence is so "unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Sauls*, 2022 IL 127732, ¶ 52.

¶ 23        A person who "knowingly resists or obstructs the performance *** of any authorized act" by a person known to be a peace officer commits the crime of resisting a peace officer. 720 ILCS 5/31-1(a) (West 2020). Although the words, "you are under arrest," do not have to be uttered by an officer to show knowledge on behalf of a defendant, " 'the intention to arrest must be communicated, and [a] defendant's understanding of that intent is a factor to be considered, "[t]he test must be not what the defendant *** thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." ' " *People v. Borders*, 2020 IL App (2d) 180324, ¶ 56 (quoting *People v. Howlett*, 1 Ill. App. 3d 906, 910 (1971), quoting *Hicks v. United States*, 382 F.2d 158, 161 (D.C. Cir. 1967)); see 720 ILCS 5/4-5 (West 2020) (stating knowledge can include awareness of the substantial probability a fact exists or that specific conduct is practically certain to produce a stated result).

¶ 24        The evidence in this case was sufficient for the jury to find that defendant resisted a peace officer. This encounter began via a traffic stop, during which Collins had already informed defendant that he had committed a moving violation. Defendant all but conceded to Collins that

the cannabis located in the SUV was not in the proper packaging, a Class A misdemeanor. See 625 ILCS 5/11-502.15(b) (West 2020) ("No driver may possess cannabis within any area of any motor vehicle upon a highway in this State except in a sealed, odor-proof, child-resistant cannabis container."). Defendant appeared willing to concede this fact in the hopes of dissuading the officer from searching the vehicle, something Collins nonetheless made clear he was going to do. Defendant's demeanor and repeated attempts to dissuade Collins from searching the vehicle resulted in Collins determining that, as a matter of officer safety, it was prudent to physically restrain defendant before proceeding to search the vehicle. Collins grabbed defendant's left arm and told him to place his arms behind his back. Defendant responded by drifting towards his vehicle and pulling his arm up towards his body in a curling motion away from Collins's grip while saying "no" multiple times. Although defendant was not specifically told he was under arrest, given the surrounding circumstances and the request from Collins, the evidence was sufficient to allow a reasonable jury to find defendant committed the offense of resisting a peace officer beyond a reasonable doubt.

¶ 25     We also disagree with defendant that this case is similar to *Borders*. In *Borders*, the Second District reversed the defendant's conviction for resisting a peace officer after concluding the evidence was insufficient to prove he knowingly resisted arrest. *Borders*, 2020 IL App (2d) 180324, ¶ 59. Police in that case were responding to a 911 call in which the person who had placed the call hung up. *Id.* ¶ 4. In the early morning hours, police arrived at the residence where the defendant was staying and from which the call originated. *Id.* While officers were interacting with another person there, the defendant voluntarily came outside to talk. *Id.* ¶¶ 8, 10. After leaving to put on additional clothes, the defendant returned to continue his discussion with officers. *Id.* ¶ 11. The defendant had been awake for no more than five minutes, and despite his voluntary

cooperation with requests, officers restrained him from reentering the home. *Id.* ¶ 59. Moments after the defendant was restrained from reentering his home and without stating he was under arrest, officers grabbed the defendant from behind, forcefully put him on the ground, told him to put his hands behind his back, and placed him in handcuffs. *Id.* The defendant had not committed a criminal offense, nor was there probable cause to believe he had done so. *Id.* The appellate court reasoned that "it would have taken a reasonable person in Borders's situation most, if not all, of that time to realize that he was being arrested." *Id.*

¶ 26        Here, the encounter was pursuant to a traffic stop due to moving violations. The officer explained to defendant that he had probable cause to search the vehicle because of the odor of cannabis, which at the time, whether the odor was from burnt or raw cannabis, was the law. See *People v. Stout*, 106 Ill. 2d 77, 88 (1985), *abrogated by People v. Redmond*, 2024 IL 129201, ¶ 54 ("The odor of burnt cannabis, standing alone without other inculpatory facts, does not provide probable cause to search a vehicle."). Defendant essentially admitted to a Class A misdemeanor because of his possession of cannabis contained in improper packaging while operating a motor vehicle. Collins approached defendant from the front and ordered him to place his hands behind his back. Not only are the facts here distinguishable from those in *Borders*, but defendant was also aware that Collins was investigating him for criminal conduct and began yelling "no" when he attempted to physically restrain him.

¶ 27        We also find distinguishable *Skube v. Koster*, 120 F. Supp. 3d 825, 831 (C.D. Ill. 2015), where the court found that simply taking a step back while questioning the officer's commands "did not constitute resistance or obstruction." Defendant here did more than take a step back; he physically resisted the officer.

¶ 28 Accordingly, viewed in the light most favorable to the State, the evidence was sufficient for a reasonable jury to conclude that defendant committed the charged offense beyond a reasonable doubt.

¶ 29                          B. Rule 431(b) Admonishments

¶ 30 Defendant's second argument is that the trial court improperly admonished prospective jurors on the *Zehr* principles codified in Rule 431(b). He acknowledges that any potential error was forfeited where it was not preserved with a contemporaneous objection or raised in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Nonetheless, he argues any error on this issue can be reviewed under the first prong of the plain-error doctrine.

¶ 31 Rule 431(b) mandates a specific question and response process, where the trial court must ask each prospective juror whether they understand and accept each principle within the rule. *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). Under the first prong of the plain-error doctrine, we may consider an unpreserved error when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Birge*, 2021 IL 125644, ¶ 24. The initial step in a plain-error analysis is usually to determine whether a clear or obvious error occurred. *People v. Johnson*, 2024 IL 130191, ¶ 44. "However, similar to the analytical framework we use to review a claim of ineffective assistance of counsel [citation], the first step of plain-error analysis is merely a matter of convention," and we may begin the analysis in any order. (Internal quotation marks omitted.) *People v. Bowens*, 407 Ill. App. 3d 1094, 1108 (2011). Where a defendant cannot establish that the evidence is closely balanced under the first prong, there is no need to determine whether an error occurred, as the claim will ultimately fail. See *People v.*

*Dillard*, 2025 IL App (4th) 230739, ¶ 124. Our review of this issue is *de novo*. *Birge*, 2021 IL 125644, ¶ 24.

¶ 32        The State acknowledges defendant's argument that it appears the trial court failed to obtain answers from all prospective jurors on whether they understood defendant was presumed innocent until proven guilty beyond a reasonable doubt, but it disputes the accuracy of the record during questioning of the venire and raises the possibility that the court reporter erred in noting the responses from jurors. However, we need not determine whether an error occurred because the evidence in this case is not closely balanced. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. We have already reviewed the sufficiency of the evidence above and recognize that question is separate and distinct from assessing the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 556 (2007).

¶ 33        Here, there was no credibility contest, and defendant did not testify. Defendant argues that even where the defense presents no evidence, the case can be closely balanced, relying on *People v. Othman*, 2020 IL App (1st) 150823-B, ¶ 70. We do not disagree with the premise generally, but a defendant must be able to point to some evidence that counterbalances the evidence tending to show guilt to prevail (*i.e.*, "evidence comes from unreliable witnesses who offer conflicting accounts or from prosecution witnesses who provide evidence favorable to [a defendant]"). *Id.*; see *People v. Williams*, 2022 IL 126918, ¶ 61 (noting the defendant's choice to present "no evidence whatsoever" was "not fatal" to a first-prong plain-error argument) (quoting *Piatkowski*, 225 Ill. 2d at 567).

¶ 34 Nonetheless, Collins's testimony was not only uncontroverted, it was corroborated by a video and audio recording of the events that formed the basis of the charge. The video shows defendant pulling away when told to place his arms behind his back after he was informed Collins was going to search the vehicle. While Collins had his arm on defendant, defendant pulled away and tried to free his arm from Collins's grip, saying "no" over and over. It is well understood to the average person that stating "no" in this context is used to give a negative response in resistance to a command or action. See Merriam-Webster.com Dictionary, "no," https://www.merriam-webster.com/dictionary/no (last visited Jan. 22, 2025). While defendant claims that pulling away from Collins was an involuntary reflex, his words belie this assertion where his words externally manifested his intent. Placing the testimony of Collins and the video against the backdrop of defendant's awareness that he had committed a petty moving violation, likely a misdemeanor for the improper storage of cannabis, and that a search of the vehicle was inevitable despite his protest to the contrary, a commonsense, qualitative analysis is not susceptible to inferences contrary to the conclusion that defendant was knowingly resisting arrest after the officer told him to place his hands behind his back. See *People v. Reeves*, 314 Ill. App. 3d 482, 489 (2000) (" 'Closely balanced' assumes the presence of some evidence from which contrary inferences can be drawn."). The evidence of defendant's knowledge that he was resisting a lawful command was not close.

¶ 35 After reviewing the totality of the evidence and conducting a qualitative and commonsense assessment of the evidence, we find the evidence was not closely balanced.

¶ 36 III. CONCLUSION

¶ 37 For the reasons stated, we affirm the trial court's judgment.

¶ 38 Affirmed.