******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LANCE W. *v.* COMMISSIONER OF CORRECTION*
## (AC 39968)

Elgo, Cradle and Suarez, Js.

*Syllabus*

The petitioner, who previously had been convicted of several crimes, including murder and arson in the first degree, filed a second petition for a writ of habeas corpus, claiming that D, his first habeas appellate counsel, rendered ineffective assistance in the petitioner's appeal to this court from the denial of his first habeas petition. A police investigator, M, had determined that a fire at the petitioner's home, in which the victim died, had been intentionally set with an accelerant, and S, the state medical examiner who performed an autopsy on the victim, testified that, because of the lack of soot in the victim's bodily organs and low level of carbon monoxide in the victim's blood, she concluded that the victim had died prior to the fire. The first habeas court, in denying the first habeas petition, concluded, inter alia, that the petitioner had presented no newly discovered evidence that proved his claim of actual innocence and failed to establish that the scientific evidence admitted at his criminal trial was false or invalid. The court also rejected the petitioner's assertions that his trial counsel, N, was ineffective in challenging the expert testimony of M and S and had a conflict of interest in representing the petitioner in a civil matter against his homeowners insurer. On the petitioner's appeal to this court, D challenged only the first habeas court's rejection of the petitioner's claims that N had a conflict of interest and had inadequately cross-examined M and S as to the cause of the victim's death and the cause of the fire. This court affirmed the judgment of the first habeas court. In his second petition for a writ of habeas corpus, the petitioner alleged that D was ineffective for having failed to challenge the first habeas court's rejection of his claims that he is actually innocent, that his conviction was based on scientifically invalid evidence, and that N was ineffective in challenging certain expert testimony adduced by the state pertaining to fire science evidence and the cause of the victim's death. The second habeas court rejected the petitioner's claims that D had rendered ineffective assistance and rendered judgment denying the petition for a writ of habeas corpus. On the granting of certification, the petitioner appealed to this court. *Held*:

1. The habeas court did not err in concluding that D's decision not to pursue an actual innocence claim did not constitute ineffective assistance, as the petitioner did not present affirmative proof of his innocence or demonstrate that there was a reasonable probability that he would have prevailed on an appeal from the first habeas court's denial of that claim; the petitioner's assertion that he is actually innocent due to the unreliability of the scientific evidence at his criminal trial was unpersuasive in that unreliable evidence cannot logically constitute affirmative proof of actual innocence, and, even if the petitioner had proven that the evidence was unreliable, such a determination, although it might undermine the jury's guilty verdict, is not affirmative proof of his innocence.

2. The petitioner could not prevail on his claim that D rendered ineffective assistance in having failed to challenge the first habeas court's rejection of the petitioner's assertion that his right to due process was violated because his conviction was based on false and invalid scientific evidence: the evidence the petitioner presented to establish that there were alternative explanations relative to the conclusions reached by M and S as to the cause of the fire and the victim's death fell short of proving that their conclusions were false or scientifically invalid, and the jury had been made aware of, and presumably considered, the existence of alternative explanations, the existence of which M and S acknowledged on cross-examination at the criminal trial; accordingly, this court was not left with a firm belief that the petitioner most likely would not have been convicted if the jury had been presented with additional competing evidence such as the opinions of expert witnesses he presented at the first habeas trial who disagreed with M and S as to the cause of the

fire and the victim's death, and, thus, it was not likely that the petitioner would have prevailed on an appeal from the rejection of his due process claim.

3. The habeas court properly concluded that D did not render ineffective assistance in deciding not to pursue the petitioner's claim that N was ineffective in challenging the testimony of M and S that pertained to the cause of the fire and the victim's death: the petitioner's contention that N should have presented expert testimony that focused on M's alleged failure to follow the scientific method was unavailing, as N's choice of experts did not give rise to a claim of deficient performance, M followed the essential steps in the scientific method, a finding by the first habeas court that the petitioner did not argue was clearly erroneous, and it was unnecessary for N to present expert testimony to refute M's testimony that an accelerant was the only possible source of a pour pattern found on the floor of the home, M having conceded on cross-examination that there were other reasonable explanations for the pour pattern that did not involve accelerants; moreover, in claiming that N was ineffective in failing to present evidence that undercut S's opinion as to the time of the victim's death, the petitioner ignored the fact that N presented evidence of that nature by way of requiring S to acknowledge having examined the body of another burn victim who did not have soot in her lungs or carbon monoxide in her blood, and the evidence the petitioner presented at the first habeas trial did not undermine S's opinions any more than her own confession did; furthermore, even if N's challenge to the testimony of M and S could be considered deficient, the petitioner failed to prove that he was prejudiced, as N demonstrated through effective cross-examination that the conclusions of M and S were not beyond reproach, and, as the jury, faced with the concessions by M and S, still found the petitioner guilty, it was not reasonably probable that D would have succeeded in demonstrating that N's counsel was constitutionally ineffective.

Argued January 4—officially released May 4, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Sferrazza, J.*, granted in part the respondent's motion to dismiss the petition; thereafter, the matter was tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Erica A. Barber*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *David M. Carlucci*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Lance W., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus alleging ineffective assistance of his first habeas appellate counsel.[1] On appeal, the petitioner claims that the habeas court erred in rejecting his claim that his first habeas appellate counsel was ineffective in failing to challenge on appeal the first habeas court's rejection of his claims that (1) he is actually innocent of the crimes of which he was convicted, (2) his constitutional right to due process was violated because his conviction was based on scientifically invalid evidence, and (3) his trial counsel was ineffective in challenging the expert testimony adduced by the state pertaining to the cause of the victim's death and the fire science evidence. We affirm the judgment of the habeas court.

The following facts, as recited by our Supreme Court in upholding this court's affirmance of the petitioner's conviction on direct appeal, are relevant to our resolution of the petitioner's claims. "On November 19, 1994, at approximately 3:19 a.m., Ronald McClain and Sheila McClain, neighbors who lived across the street from the [petitioner on Hillside Avenue in Plymouth], awoke to screams from the [petitioner's] children. Ronald McClain observed an orange glow coming from the left side of the [petitioner's] house. He also observed the [petitioner's] two children on the roof of the front porch, a ladder against the front porch and the [petitioner] standing at the bottom of the ladder. [Ronald] McClain called 911 and went downstairs to let the [petitioner and his children] into [McClain's] home. The children were screaming that their house was on fire and that they could not find their mother [Wendy W.]. The [petitioner] stated that his wife was in the house, that he could not get her out and that he did not know if she had come home. The children remained at the McClain home while the [petitioner] and Ronald McClain returned to the burning house. The [petitioner] again stated that he did not know if his wife had come home that evening.

"The firefighters arrived a few minutes later and found the [petitioner] outside the house, confused and attempting to put water on the fire with a garden hose. The [petitioner] told the firefighters that he did not know his wife's whereabouts. Later, the [petitioner], while he pointed to the den, told fireman Frederick Telke, 'Yes, she's in here, she's in here.' When asked if he was sure, the [petitioner] walked to the driveway and pointed to his wife's car.

"Firefighters entered the home and approached the den, where the fire was concentrated, but were unable to remain due to the high temperatures, heavy smoke and unstable floor. The body of the victim . . . was

later found in this area. Firefighters also entered the second floor of the house and found only smoke damage. They did not hear any smoke detector alarms.

"Several hours later, Officer Gerald Allain of the Plymouth [P]olice [D]epartment questioned the [petitioner]. The [petitioner] stated that the victim smoked cigarettes and that he recalled the smoke alarms going off. He stated that the thick smoke forced him to his knees [and that] he took the children to the porch roof.

"On November 19, 1994, the [petitioner] gave a signed, written statement to the police. He indicated that the victim slept on the couch because their marriage was 'on the rocks.' That same day, the [petitioner] told the victim's uncle, James Castiola, that he knew what had happened. He stated that the victim had come home, and had lain down on the couch, [near] approximately fifty videotapes. While on the couch, the victim had lit a cigarette and had fallen asleep. The [petitioner] told Castiola that the fire had been accelerated by the videotapes, which cannot be put out when they catch fire.

"State Trooper Kevin McGurk was assigned to determine the cause and origin of the fire. He examined the [petitioner's] home the following morning and determined that the fire originated in the den. McGurk discovered a pour pattern [consisting of a line of holes] leading up to the area of origin, which indicated that an accelerant had been used. On the basis of his observations, McGurk concluded that the fire had been intentionally set. Other officers executed a search warrant on the [petitioner's] home and retrieved an empty bottle of bleach from the basement and a can of acetone from the storage shed. Joseph Cristino, a forensic analysis engineer, examined the two smoke detectors retrieved from the [petitioner's] home. [Cristino found that it was 'highly improbable' that the first floor smoke detector was working at the time of the fire and that, had the battery been connected to the second floor detector, there was a high probability that it would have worked at the time of the fire.]

"A notebook also was seized from the [petitioner's] bedroom dresser. The parties stipulated that the notes contained therein were written in the [petitioner's] handwriting. The [petitioner] was a member of the fire brigade at work and had received training in chemical fires and hazardous materials. The [petitioner] was familiar with spontaneous combustion caused by the combination of alkalies and acids. The [petitioner] admitted writing various phrases in the notebook, such as 'lock box in shed,' 'tool box,' 'acetone,' 'alcohol clorox,' 'alm foil,' 'dry run,' 'rope kds drs,' 'straps,' 'pillow,' 'oil in can,' 'rid of stuff,' 'glvs,' 'hat,' 'shirt,' 'cigs,' and 'ldr.' The [petitioner] stated that these abbreviations could have been a camping list, but that he did not know why he wrote these abbreviations." *State* v. *Wargo*, 255

Conn. 113, 117–19, 763 A.2d 1 (2000).

"On direct examination, [the state's associate medical examiner, Malka] Shah testified about the results of the autopsy that she had performed on the victim. Shah explained that the victim's body had been burned beyond recognition, and that the victim could be identified only by reference to her dental records. Shah further stated that the victim's body was so badly charred that she was unable to conduct an examination of the victim's skin. Shah, however, indicated that she was able to examine the victim's internal organs, including her lungs. Shah stated that, on the basis of her examination of those organs, the victim 'definitely' had died prior to the fire." Id., 119–20. "Shah explained that the lack of soot in the victim's lungs and larynx and on the victim's tongue, coupled with the low level of carbon monoxide in her blood, led her to conclude that the victim 'was definitely dead before the fire.'" Id., 120 n.7. "Moreover, although Shah testified that she could not determine either the cause of the victim's death or the manner in which she had died, Shah's examination of the victim's internal organs revealed that the victim had not died of natural causes." Id., 120.

The petitioner was convicted of one count of murder in violation of General Statutes § 53-54a (a), two counts of arson in the first degree in violation of General Statutes § 53a-111 (1) and (4), one count of tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1), and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21. As noted, his conviction was affirmed by this court and our Supreme Court.

On July 25, 2005, the petitioner filed an action seeking a writ of habeas corpus (first habeas action) on the following bases: (1) that he is actually innocent of the crimes of which he was convicted; (2) that his right to due process was violated because the expert testimony presented at his criminal trial regarding the cause of the victim's death and the cause and origin of the fire was false and unreliable; (3) that his trial attorney provided ineffective assistance because he had a conflict of interest in representing him in a civil contingent fee matter against his homeowners insurance carrier and in the criminal matter giving rise to the present habeas petition; and (4) that his trial attorney was ineffective in his cross-examination of the witnesses who testified as to the cause of the victim's death and the fire science evidence.

Following a ten day trial, the habeas court, *Schuman, J.* (first habeas court), issued a memorandum of decision dated January 20, 2011, in which it rejected all four of the petitioner's claims and denied his petition. The habeas court thereafter granted the petitioner's petition for certification to appeal to this court.

On appeal, the petitioner, who was then represented by Attorney Christopher Y. Duby, challenged only the first habeas court's rulings that the petitioner's trial counsel had a conflict of interest and inadequately cross-examined the state's expert witnesses regarding the cause of the victim's death and the cause of the fire in accordance with *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), which was decided a few months after the conclusion of the petitioner's criminal trial. *Wargo* v. *Commissioner of Correction*, 144 Conn. App. 695, 73 A.3d 821 (2013), appeal dismissed, 316 Conn. 180, 112 A.3d 777 (2015). This court affirmed the judgment of the first habeas court. Id.

The petitioner thereafter filed the present habeas action, alleging ineffective assistance of Duby in appealing from the first habeas court's denial of his first habeas petition.[2] Specifically, the petitioner claimed that Duby was ineffective in failing to challenge the first habeas court's rejection of his actual innocence and due process claims. The petitioner further claimed that Duby was ineffective in failing to "adequately and effectively present the claim that the petitioner's right to [the] effective assistance of trial counsel was violated."

On November 17, 2016, the habeas court, *Sferrazza, J.*, issued a memorandum of decision, following an evidentiary hearing, concluding that the petitioner failed to prove that Duby's performance was deficient or that the petitioner was thereby prejudiced. Accordingly, the habeas court denied the petition for a writ of habeas corpus. The habeas court thereafter granted certification to appeal and this appeal followed.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a

petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 11–13, 242 A.3d 107, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020). With these principles in mind, we turn to the petitioner's specific claims of ineffective assistance of his first habeas appellate counsel.[3]

I

The petitioner first claims that the habeas court improperly concluded that Duby did not render ineffective assistance by failing to challenge on appeal the first habeas court's rejection of his contention that he was actually innocent of the crimes of which he was convicted. We disagree.

"Habeas corpus relief in the form of a new trial on the basis of a claim of actual innocence requires that the petitioner satisfy . . . two criteria . . . . [T]he petitioner [first] must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime. . . .

"As to the first prong, [our Supreme Court has] emphasized . . . that the clear and convincing standard . . . is a very demanding standard and should be understood as such, particularly when applied to a habeas claim of actual innocence, where the stakes are so important for both the petitioner and the state. . . . [That standard] should operate as a weighty caution upon the minds of all judges, and it forbids relief when-

ever the evidence is loose, equivocal or contradictory. . . . [The standard requires] extraordinarily high and truly persuasive demonstration[s] of actual innocence. . . .

"Moreover, actual innocence [must be] demonstrated by *affirmative proof* that the petitioner did not commit the crime. . . . Affirmative proof of actual innocence is that which might tend to establish that the petitioner could not have committed the crime . . . that a third party committed the crime, or that no crime actually occurred. . . . Clear and convincing proof of actual innocence does not, however, require the petitioner to establish that his or her guilt is a factual impossibility. . . . In part for these reasons, [our Supreme Court has] emphasized . . . that truly persuasive demonstrations of actual innocence after conviction in a fair trial have been, and are likely to remain, extremely rare." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bowens* v. *Commissioner of Correction*, 333 Conn. 502, 518–19, 217 A.3d 609 (2019).

The first habeas court rejected the petitioner's claim of actual innocence with little discussion, concluding that "the petitioner offered no newly discovered evidence, as our case law defines that phrase." *Wargo* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-05-4000584 (January 20, 2011) (*Schuman, J.*). The first habeas court further held: "[T]he petitioner did not prove by clear and convincing evidence that he is actually innocent. Even the petitioner's experts concluded that the cause of death and the cause of the fire should remain undetermined. Thus, the evidence is not clear and convincing that the victim died on her own accord and that the fire was accidental." Id.

In the present action, the habeas court rejected the petitioner's argument that Duby was ineffective in failing to challenge the first habeas court's denial of his actual innocence claim. The habeas court agreed with the first habeas court's conclusion that the petitioner produced no newly discovered evidence that affirmatively proved his actual innocence.

The petitioner now argues that he "is actually innocent due to the inherent unreliability of the scientific evidence presented at [his] criminal trial." The petitioner's argument is unpersuasive in that unreliable evidence cannot logically constitute affirmative proof of actual innocence.[4] Moreover, even if the petitioner had proven that the scientific evidence presented by the state at the underlying criminal trial was unreliable, such a determination might undermine the jury's guilty verdict, but it is not affirmative proof of the petitioner's innocence. See *Bowens* v. *Commissioner of Correction*, supra, 333 Conn. 520 ("[s]imply casting doubt on the reliability of a state's witness, even a star witness, fails to qualify as affirmative proof of innocence"); *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 803, 138

A.3d 908 (2016) (discrediting evidence on which conviction rested does not revive presumption of innocence). On the basis of the foregoing, we agree that the petitioner failed to present proof that would tend to establish that he could not have committed the crime, a third party committed the crime, or that no crime actually occurred. Because the petitioner did not present affirmative proof of his innocence, he has failed to demonstrate that there was a reasonable probability that he would have prevailed on an appeal from the first habeas court's denial of his actual innocence claim. Accordingly, the habeas court did not err in concluding that Duby's decision not to pursue the petitioner's actual innocence claim on appeal did not constitute ineffective assistance of counsel.

## II

The petitioner next claims that Duby provided ineffective assistance of counsel by failing to challenge the first habeas court's rejection of his claim that his constitutional right to due process was violated because his conviction was based on false and scientifically invalid evidence, specifically, the expert testimony of Shah and McGurk, pertaining to the cause of the victim's death and the cause and origin of the fire. We are not persuaded.

In *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 800, our Supreme Court acknowledged that Connecticut courts have not yet resolved the question of whether the state's unknowing use of allegedly false evidence violates due process.[5] The court explained: "Although [a] majority of the federal circuit courts require a knowing use of perjured testimony by the prosecution to find a violation of due process . . . the United States Court of Appeals for the Second Circuit has held that, when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated . . . if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted. . . . *Ortega* v. *Duncan*, 333 F.3d 102, 108 (2d Cir. 2003)." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 801.

In *Horn*, the court expressly declined to adopt *Ortega* or otherwise resolve the issue of whether an unknowing use of false evidence could furnish the basis for habeas relief, instead concluding that the petitioner had not established conclusively that the witnesses had committed perjury and that, even without the witnesses' testimony, there was no reasonable probability that the petitioner would not have been convicted. Id., 801–802. Accordingly, the court concluded that the petitioner had not been deprived of his constitutional due process right to a fair trial. Id., 802.

Similarly, the first habeas court here concluded that, even if the petitioner's due process claim was cognizable under *Ortega*, he failed to prove that the evidence adduced at his criminal trial was false or scientifically invalid. The first habeas court reasoned: "[T]he petitioner does not present evidence of any materially false testimony, such as a witness recanting on an issue of fact. Rather, the petitioner presents only different experts who disagree with the experts who testified at the criminal trial on matters of opinion, such as the cause of the fire and the cause of death. There is no reason or authority for granting habeas relief solely on that basis, lest habeas become simply an opportunity for a prisoner to retry his case using different experts." *Wargo* v. *Warden*, supra, Superior Court, Docket No. CV-05-4000584.

Even if we assume without deciding that the petitioner set forth a valid due process claim under *Ortega*, we agree with the first habeas court's conclusion that the petitioner failed to establish that the scientific evidence admitted at his criminal trial was false or scientifically invalid. The petitioner argues that he presented evidence at his first habeas trial that "a forensic pathologist cannot properly conclude that the absence of soot deposits in the throat or lungs, and the lack of elevated carbon monoxide levels in the blood, means that a victim was dead before a fire started." The petitioner further contends that he presented evidence at his first habeas trial "to establish that there was an alternative explanation for the straight line of holes" that was discovered in the room in which the victim's body was found. As described by the petitioner's expert in this action, however, the evidence presented at his first habeas trial established "alternate explanations" to the conclusions reached by the state's experts in the petitioner's underlying criminal trial. The existence of alternative explanations falls short of proving that the expert opinions rendered by Shah and McGurk were false or scientifically invalid. The first habeas court's conclusion that the evidence presented by the petitioner at his first habeas trial amounted to differing expert opinions, versus proof that the evidence was scientifically invalid, was therefore consistent with the expert testimony adduced by the petitioner at his habeas trial here.

Moreover, both Shah and McGurk, on cross-examination at the petitioner's criminal trial, acknowledged the existence of alternative explanations for their conclusions regarding the cause of the victim's death and the cause and origin of the fire. As the petitioner aptly notes in his brief to this court, Shah conceded at the petitioner's criminal trial that she had performed an autopsy on another burn victim on the same day as the autopsy of the victim in this case and that the other victim also had no soot or carbon monoxide in her lungs. Similarly, when he was cross-examined at the

petitioner's criminal trial, McGurk acknowledged that there were "other explanations for the burn pattern other than the use of an accelerant." Therefore, the jury was made aware of, and presumably considered, the existence of alternative explanations to the conclusions reached by Shah and McGurk.

On the basis of the foregoing, we agree with the first habeas court that the petitioner failed to prove that his conviction was based on false or scientifically invalid evidence, and we are not left with a firm belief that the petitioner would most likely not have been convicted if the jury had been presented with additional competing evidence such as that adduced by the petitioner at his first habeas trial. We therefore conclude that it is not likely that the petitioner would have prevailed on an appeal from the first habeas court's rejection of his due process claim and that the habeas court did not err in holding that the petitioner failed to meet his burden of demonstrating that Duby's decision not to pursue that claim in his appeal from the first habeas court's decision constituted ineffective assistance of counsel.

III

Finally, the petitioner claims that Duby was ineffective in failing to pursue on appeal his claim that his trial counsel, M. Hatcher Norris, was ineffective in challenging the expert testimony adduced by Shah and McGurk pertaining to the cause of the victim's death and the cause of the fire.[6] The petitioner now argues that Duby should have challenged the first habeas court's rejection of his claim that Norris was ineffective in challenging Shah's testimony because "evidence undercutting Shah's claims concerning the time of death would have substantially weakened the state's case against [him]." As to McGurk, the petitioner argues that Duby should have pursued on appeal his claim that Norris failed to present evidence rebutting McGurk's opinion that the only possible source of the line of holes was an ignitable liquid and that he should have emphasized McGurk's failure to employ the scientific method when he investigated the fire. We disagree.

We begin by noting that "[a] claim such as [that raised by the petitioner here], which concerns the ambit of cross-examination, falls short of establishing deficient performance. . . . An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy. . . . The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." (Citation omitted; internal quotation marks omitted.) *Ruiz* v. *Commissioner of Correction*, 195 Conn. App. 847, 861, 227 A.3d 1049, cert. denied, 335 Conn. 915, 229 A.3d 729 (2020).

In assessing the petitioner's claim that Norris was ineffective in challenging Shah's testimony, the first habeas court found, inter alia, that Norris "made the essential point that the absence of soot and carbon monoxide in the victim's body did not necessarily imply that the victim died before the fire. Norris emphasized this point by eliciting the ironic fact that, on the same day [that Shah performed the autopsy in this case], Shah did an autopsy of another burn victim who died with no soot or carbon monoxide in her lungs." (Footnote omitted.) *Wargo* v. *Warden*, supra, Superior Court, Docket No. CV-05-4000584. The first habeas court concluded: "There is no evidence . . . that further questioning [of Shah] would have benefited the petitioner. Even the petitioner's pathology expert at the [first] habeas trial could not cite any discussion in the literature of victims of flashover fires who had died without soot or carbon monoxide in their body." Id. "Norris had also prepared commendably for cross-examination by retaining his own pathologist as an expert consultant, speaking to another noted pathologist, and doing research and reading in the field." Id.

In arguing that Duby should have pursued his claim that Norris was ineffective in failing to present evidence that undercut Shah's claims concerning the time of the victim's death, the petitioner ignores the fact that Norris did present evidence of that nature by way of requiring Shah herself to acknowledge the fact that she had examined the body of another burn victim who did not have soot in her lungs or carbon monoxide in her blood. As the first habeas court explained, the evidence that the petitioner presented at his first habeas trial did not undermine Shah's opinions any more than her own concession did. We therefore agree with the first habeas court's conclusion that Norris did not render ineffective assistance of counsel in his challenge to Shah's opinion as to the time of the victim's death.

In rejecting the petitioner's claim that Norris was ineffective in his challenge to McGurk's testimony, the first habeas court reasoned, inter alia: "On cross- and recross-examination, Norris brought out that McGurk found no 'rainbow effect,' which one might expect from the pouring of an ignitable liquid, that forensic tests revealed no evidence of accelerants in the floor or in the petitioner's clothing, that McGurk could not say what type of accelerant was used, that there were explanations for the pattern on the floor that did not involve accelerants, and that McGurk turned the property back to the petitioner after the fire, which he would not have done if he suspected arson at the time." Id. The first habeas court further explained: "The petitioner presented the testimony of Christopher Wood as an example of the type of expert testimony that Norris should have presented. Wood is a fire protection engineer who did prove knowledgeable and articulate on the [witness]

stand. Prior to his testimony, Wood had tested the hypothesis that an accidental fire that goes to flashover could produce a burn pattern similar to the line of holes in this case. Wood demonstrated that a similar burn pattern could occur as a result of, and directly over, a gap or seam in the carpet padding, which would leave the floor with less protection. Norris, however, had no obligation to call an expert who would have conducted a similar experiment or who would have provided similar testimony. The choice of which expert to call is largely a matter of professional judgment." Id.

The petitioner argues that Duby should have pursued on appeal his claim that Norris provided ineffective assistance of counsel when he failed to "challenge McGurk's testimony with scientific evidence flatly refuting his claims" "that the only possible source of the line of holes was an ignitable liquid . . . ." He asserts that Norris should have focused on McGurk's alleged failure to employ the scientific method by presenting the testimony of an expert such as Wood. "A trial attorney is entitled to rely reasonably on the opinion of an expert witness . . . and is not required to continue searching for a different expert [or for multiple experts]." (Citation omitted; internal quotation marks omitted.) *Brian S.* v. *Commissioner of Correction*, 172 Conn. App. 535, 542–43, 160 A.3d 1110, cert. denied, 326 Conn. 904, 163 A.3d 1204 (2017). Thus, Norris' choice of experts does not give rise to a claim of deficient performance. Moreover, the first habeas court found that "McGurk did follow the essential steps in the scientific method. In particular, McGurk used deductive reasoning in testing his hypothesis that the fire was incendiary by eliminating all reasonable alternative explanations."[7] *Wargo* v. *Warden*, supra, Superior Court, Docket No. CV-05-4000584. The petitioner has not argued that the first habeas court's finding was clearly erroneous.

The petitioner's argument is also unpersuasive in light of the fact that Norris elicited from McGurk on cross-examination a concession that there were explanations for the pattern on the floor that did not involve accelerants. It was therefore unnecessary for Norris to present expert testimony to refute McGurk's initial testimony that the only possible source of the pattern on the floor was an accelerant.

Even if Norris' challenge to the testimony of Shah and McGurk could be considered deficient, the petitioner failed to prove that he was thereby prejudiced. The petitioner argues that, "[h]ad the jury been made aware of this critical scientific evidence, there is a reasonable probability that the outcome of the trial would have been different." This argument is unpersuasive because, as noted herein, Norris was able to demonstrate through his effective cross-examination of Shah and McGurk that their conclusions were not beyond reproach. Shah was forced to acknowledge before the jury that not all

victims who die in a fire have soot in their lungs and carbon monoxide in their blood. Similarly, McGurk acknowledged that there were reasonable explanations for the cause and origin of the fire that did not involve accelerants. Faced with those concessions by Shah and McGurk, the jury still found that the petitioner was guilty beyond a reasonable doubt of the crimes with which he had been charged. It is therefore not reasonably probable that Duby would have succeeded in demonstrating that Norris' counsel was constitutionally ineffective. Accordingly, the habeas court properly concluded that Duby's decision not to pursue this claim on appeal did not constitute ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] Although the petitioner had filed additional prior habeas petitions, they have no bearing on the issues presented in this appeal. For ease of reading, we therefore refer to the petition from which the claims raised herein arise, which was filed on July 25, 2005, as the first habeas action.

[2] The petitioner also alleged prosecutorial misconduct, and ineffective assistance of his trial counsel, appellate counsel, and his first habeas counsel. The habeas court dismissed those allegations and the petitioner has not challenged that ruling.

[3] The transcripts of the petitioner's criminal trial were not introduced into evidence at the petitioner's second habeas trial. He sought to rectify the record to include them, but that motion was denied. This court granted review of the denial of the petitioner's motion to rectify, but denied the relief requested therein. The petitioner now asks this court to take judicial notice of those transcripts. We decline to revisit this issue.

[4] The petitioner also contends that the "expert testimony leading to a criminal conviction later shown to be unreliable under prevailing scientific standards may qualify as 'newly discovered' evidence in collateral appeals." Because we agree with the habeas court and the first habeas court that the petitioner failed to present affirmative proof of his actual innocence, we need not address this argument.

[5] The petitioner does not allege, nor was there any evidence, that the state knowingly presented or failed to correct false testimony.

[6] Although, as noted; see footnote 3 of this opinion; the transcripts of the petitioner's underlying criminal trial were not introduced as evidence before the habeas court in this matter, and are, therefore, not available for our review, we are able to assess the petitioner's claim from the recitation of facts set forth by our Supreme Court and the first habeas court. The petitioner does not contend that those facts were erroneous. He challenges the legal conclusions drawn from those facts, and we address those arguments herein.

[7] Specifically, the first habeas court found: "The petitioner has pointed to no case law authority holding that McGurk's methodology was not generally accepted in the scientific community. Cf. *State* v. *Sharp*, 395 N.J. Super. 175, 180–82, 928 A.2d 165 (2006) (fire causation opinion based on process of elimination technique admitted under [test in *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923)). The petitioner instead relies on the National Fire Protection Association 921 Guide for Fire and Explosion Investigations (1995 Ed.) (NFPA 921), which provides that the scientific method is the systematic approach recommended in fire investigations. The NFPA 921 then defines the scientific method as containing six steps: recognizing the need for investigation, defining the problem, collecting data, analyzing the data, developing a hypothesis, and testing the hypothesis through deductive reasoning. . . .

"The petitioner also supplies no authority that, to be admissible at the time of trial, cause and origin testimony had to follow the scientific method outlined in the NFPA 921. In any case, the testimony recited [previously] establishes that McGurk did follow the essential steps in the scientific

method. In particular, McGurk used deductive reasoning in testing his hypothesis that the fire was incendiary by eliminating all reasonable alternative explanations." (Citation omitted.) *Wargo* v. *Warden*, supra, Superior Court, Docket No. CV-05-4000584.

———————————————