******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MICHAEL R. FOSTER *v.* COMMISSIONER OF CORRECTION
## (AC 45132)

Cradle, Suarez and Clark, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of the crime of murder, sought a writ of habeas corpus, alleging ineffective assistance of his trial counsel. As a result of a head injury the petitioner sustained during the commission of the underlying offense, as well as his claims of amnesia both before and after the incident, the petitioner's trial counsel requested that he be evaluated for competency to stand trial. Following a competency evaluation and hearing, the trial court found the petitioner competent to stand trial. Subsequently, the petitioner pleaded guilty pursuant to *Alford* v. *North Carolina* (400 U.S. 25), and was sentenced in accordance with the plea agreement. In his habeas action, the petitioner alleged that his trial counsel's representation of him was constitutionally deficient in that counsel failed to advise him not to plead guilty and that his guilty plea was not made voluntarily. The habeas court denied the petition, and, on the granting of certification to appeal, the petitioner appealed to this court. *Held* that the habeas court properly denied the petition for a writ of habeas corpus, the petitioner having failed to demonstrate that, but for his trial counsel's conduct, he would not have pleaded guilty, thereby failing to prove that he suffered prejudice under *Strickland* v. *Washington* (466 U.S. 668): the habeas court's findings were supported by the evidence in the record, and this court was not left with the definite and firm conviction that a mistake had been committed, as, at the habeas trial, the petitioner testified that he did not want to put his wife and children through a trial because he believed his wife would have had to testify about weapons and illegal drugs in their home, his wife would go to jail as a result, and that his children would end up in the foster care system; moreover, the habeas court found that no credible evidence supported the petitioner's bare assertion at the habeas trial that, had he been properly advised, he would have insisted on entering a conditional plea of nolo contendere in order to preserve an appeal of the trial court's competency determination, the habeas court having found the petitioner's testimony in that regard not to be credible, and, as it was the habeas court's function to weigh the evidence and determine credibility, this court gave great deference to its findings.

Argued October 12, 2022—officially released February 21, 2023

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Seeley, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Nicole P. Britt*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*James M. Ralls*, special assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *David M. Carlucci*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Michael R. Foster, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus alleging ineffective assistance of counsel. On appeal, the petitioner claims that the habeas court incorrectly concluded that his trial counsel did not provide ineffective assistance by failing (1) to advise the petitioner to reject the plea offer because it was effectively a life sentence, (2) to advise the petitioner to reject the plea offer because he would lose his right to appeal the trial court's determination that the petitioner was competent to stand trial, and (3) to preserve the petitioner's right to appeal from the trial court's determination that the petitioner was competent to stand trial. We affirm the judgment of the habeas court.

The following facts, as set forth by the habeas court, and procedural history are relevant to the petitioner's claims on appeal. On September 9, 2005, the petitioner arrived at the victim's house carrying a crowbar and bug spray. The petitioner rang the victim's doorbell, and, when the victim came to the door, the petitioner sprayed bug spray at her and beat her with the crowbar. The victim fled from her home to her neighbors' house, but the petitioner followed her into the neighbors' house and continued the assault. One of the victim's neighbors intervened, threatening to shoot the petitioner if he did not cease his attack on the victim. When the petitioner did not relent, the neighbor fired his single-shot rifle at the petitioner. Although the shot struck the petitioner in the back of his head, the bullet did not penetrate his skull, and he continued his attack. As the petitioner continued to hit the victim with the crowbar, the neighbor reloaded his rifle and fired again, this time striking the victim. The victim died from her injuries. An autopsy revealed the victim's cause of death was both blunt force trauma to the head—caused by the petitioner's attack with the crowbar—and a gunshot wound to the heart.

The petitioner left the neighbors' residence and returned to the parked vehicle that he had driven to the victim's home. Later, the police found the petitioner sitting inside the vehicle. The police took the petitioner into custody, and, upon discovering the petitioner's head injury, the petitioner was transported to a hospital for medical treatment. While at the hospital, the petitioner "reported some degree of post-traumatic amnesia in relation to the events surrounding his injury."

The petitioner was subsequently arrested and charged with murder in violation of General Statutes § 53a-54a,[1] among other offenses.[2] Attorney Todd Edgington represented the petitioner throughout the criminal trial proceedings. In light of the head injury the petitioner sus-

tained during the commission of the underlying offense, as well as the petitioner's claims of amnesia, Edgington referred the petitioner to David Lovejoy, a clinical neuropsychologist, who performed an assessment on the petitioner on March 16, 2006. Lovejoy determined that the petitioner's description of his memory loss indicated more than twelve hours of anterograde amnesia—an inability to recall postincident events—and two to three hours of retrograde amnesia—an inability to recall preincident events. Additionally, Lovejoy reported that the last memory the petitioner had prior to the onset of his amnesia was of leaving his home to buy a dehumidifier for his wife. However, despite the petitioner's traumatic brain injury and resulting amnesia, Lovejoy concluded that the petitioner had otherwise recovered and displayed no other psychological deficits.

Edgington subsequently requested that the petitioner be evaluated for competency to stand trial. On May 15, 2006, the trial court, *Clifford, J.*, ordered a competency evaluation of the petitioner pursuant to General Statutes § 54-56d.[3] A clinical team of three professionals from the Office of Court Evaluations assessed the petitioner and determined that he "was able to understand the proceedings against him and was able to assist in his own defense," noting that "[h]is thinking is rational, his communication abilities are intact and he is motivated to defend himself." (Internal quotation marks omitted.)

In August, 2006, the trial court, *D'Addabbo, J.*, held a competency hearing over three days during which Edgington argued that the petitioner was not competent to stand trial because he was unable to assist in his own defense due to his memory loss during the time period before and after the offense. On November 16, 2006, the court issued an oral decision finding the petitioner competent to stand trial. In so doing, the court applied the test adopted in *State* v. *Gilbert*, 229 Conn. 228, 640 A.2d 61 (1994),[4] to determine the extent to which the petitioner's amnesia rendered him unable to assist in his own defense. The court concluded that, "[u]nder the *Gilbert* analysis in this pretrial setting . . . the claimed loss of memory does not prevent the state from prosecuting the [petitioner] [and that] the [petitioner] . . . [is] competent as he is able to understand the proceedings against him and to assist in his own defense." (Internal quotation marks omitted.)

Then, on November 20, 2007, the petitioner pleaded guilty, pursuant to the *Alford* doctrine[5], to murder in violation of § 53a-54a. In exchange for his plea, the petitioner agreed to a sentence of no greater than fifty years of incarceration, with the right to argue for a lesser sentence of forty years of incarceration. During the court's canvass, the petitioner acknowledged that, had he gone to trial, there was a likelihood that he would be convicted of the crime of murder, as well

as the other charged offenses, and possibly receive a greater sentence thereafter.[6] He further admitted during the canvass that his reason for entering a guilty plea was to avoid the risk of a longer sentence following a trial. The court, *Alexander, J.*, following a sentencing hearing, sentenced the petitioner to a total effective sentence of fifty years of incarceration on January 25, 2008. The state entered a nolle prosequi on the remaining charges.

On or about June 9, 2016, the petitioner filed a petition for writ of habeas corpus. After the petitioner was appointed counsel, he filed an amended petition on February 15, 2019, in which he claimed that Edgington's representation of him was constitutionally deficient in that he failed to advise him not to plead guilty. He also alleged that his guilty plea was not voluntary.[7]

The petitioner's claims were tried to the habeas court, *Seeley, J.*, on March 4, 2020.[8] The habeas court filed a memorandum of decision on October 4, 2021, in which it found the following facts: "The petitioner's trial counsel in the criminal case was Todd Edgington, an experienced criminal defense attorney who was employed as a public defender at the time he represented the petitioner. He had represented numerous clients over his thirty year career in which competency was an issue. After the trial court found the [petitioner] competent to stand trial, Edgington consulted with attorneys within the appellate unit of the Office of the Public Defender regarding the viability of success on appeal relating to the trial's court's finding of competency and application of the *Gilbert* factors. He was told there was no indication that the Connecticut Supreme Court would revisit its decision in *Gilbert*. He also made a determination that he did not believe the issue would be successful on appeal.

"Edgington had a positive relationship with the petitioner throughout his representation of him. Edgington did not have a plan to proceed to trial because from a very early stage in his representation, the petitioner did not want a trial. The petitioner recognized that there was certain information that would have come out at trial that would have been very damaging to his family. The petitioner's marriage with his wife was 'good,' he 'worshipped' her and there was no other woman for him. The petitioner . . . did not want to put his wife and children through a trial, nor did he want to expose his wife to possible prosecution relating to illegal drugs in their residence.[9]

"Prior to the petitioner pleading guilty to murder, Edgington met with the petitioner numerous times at the correctional facility and never felt rushed. He discussed the state's evidence with the petitioner, as well as what the state would have to prove in order to obtain a conviction at trial, and the maximum exposure he would face if he proceeded to trial. Edgington deter-

mined that it was a strong case for the state in light of witnesses who observed the petitioner repeatedly striking the victim with a tire iron. It was Edgington's practice to explain the offer to his client, and then point out the consequences if a client were to accept the offer and enter a guilty plea, and the consequences if the client rejected the offer and proceeded to trial. Furthermore, it was his practice to advise a client that by pleading guilty, the client would lose his appellate rights, as well as to discuss possible defenses. Edgington discussed the necessary issues with the petitioner over a period of time, and not just before the petitioner entered his guilty plea. This court finds credible Edgington's testimony that he would have explained to the petitioner that, by pleading guilty, he would be losing his appellate rights, since that was part of his standard advice when preparing a client to plead guilty." (Footnote in original; footnote omitted.)

On the basis of the foregoing facts, the habeas court concluded, first, that "[t]he petitioner [had] not offered any credible evidence that [Edgington's] performance fell below an objective standard of reasonableness." Second, the habeas court concluded that the petitioner failed to satisfy the prejudice prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because he "failed to establish a reasonable probability that, but for counsel's errors, he would not have pleaded guilty to the charge of murder under the *Alford* doctrine, and would have insisted on entering a nolo contendere plea pursuant to General Statutes § 54-94a, conditioned on the right to appeal the trial court's denial of the motion to dismiss." The court found that "[t]he credible evidence presented establishes the petitioner entered his guilty plea under the *Alford* doctrine because he did not want to run the risk that the state would pursue charges against his wife. There is no credible evidence presented that the petitioner would have insisted on entering a conditional nolo contendere plea so that he could have appealed the trial court's finding of competency." Relying on these independent grounds, the habeas court denied the petitioner's petition for writ of habeas corpus. The habeas court thereafter granted certification to appeal, and this appeal followed.

The standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the *Strickland* test, when a petitioner alleges ineffective assistance of counsel, he must estab-

lish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of the *Strickland* test, failure to satisfy either prong is fatal to a habeas petition. . . .

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Furthermore, the right to counsel is not the right to perfect counsel." (Citations omitted; internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 214 Conn. App. 199, 212–13, 280 A.3d 526, cert. denied, 345 Conn. 967, 285 A.3d 736 (2022).

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Lance W.* v. *Commissioner of Correction*, 204 Conn. App. 346, 355, 251 A.3d 619, cert. denied, 337 Conn. 902, 252 A.3d 363 (2021).

The habeas court denied the petitioner's petition on the ground that he failed to satisfy both the performance prong and the prejudice prong. In challenging that determination, the petitioner argues that the habeas court incorrectly concluded that his trial counsel did not provide ineffective assistance by failing (1) to advise the petitioner to reject the plea offer because it was effectively a life sentence, (2) to advise the petitioner to reject the plea offer because he would lose his right to appeal the trial court's determination that the petitioner was competent to stand trial, and (3) to preserve the petitioner's right to appeal from the trial court's determination that the petitioner was competent to stand trial.

On appeal, we need not decide whether the petitioner's trial counsel rendered deficient performance

because, even if we assume that the alleged performance was deficient, all three claims raised by the petitioner fail because the petitioner failed to prove that he was prejudiced by his trial counsel's conduct. See *Santiago* v. *Commissioner of Correction*, 213 Conn. App. 358, 366, 277 A.3d 924 ("[b]ecause both [the deficient performance and prejudice] prongs [of the *Strickland* test] . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong" (internal quotation marks omitted)), cert. denied, 345 Conn. 903, 282 A.3d 466 (2022).

With respect to the prejudice prong, the petitioner argues that, had trial counsel informed and advised him appropriately, the petitioner would have pleaded differently. We are not persuaded.

In the context of a habeas petition claiming ineffective assistance of counsel where the petitioner pleaded guilty, a petitioner satisfies the prejudice prong of the *Strickland* test if he reasonably demonstrates that, but for the conduct of counsel, the petitioner would not have pleaded guilty. See *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018). However, a petitioner "must make more than a bare allegation that he would have pleaded differently" to demonstrate prejudice; (internal quotation marks omitted) id.; because "such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." *Hooper* v. *Garraghty*, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843, 109 S. Ct. 117, 102 L. Ed. 2d 91 (1988).

"It is well established that [t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Thus, the court's factual findings are entitled to great weight. . . . Furthermore, [a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 213 Conn. App. 368–69.

As noted earlier in this opinion, the habeas court found that the petitioner entered his guilty plea under

the *Alford* doctrine because he did not want to run the risk that the state would pursue charges against his wife and did not want to put his family through a trial. The habeas court further found that no credible evidence supported his claim that he would have insisted on entering a conditional plea of nolo contendere in order to preserve an appeal of the trial court's competency determination.

Following our careful review of the record, we conclude that the habeas court's findings are supported by the evidence in the record, and we are not left with the definite and firm conviction that a mistake has been committed. At the habeas trial, the petitioner testified that he "didn't want to put [his] wife and children through" a trial because he believed his wife would have to testify about "weapons in [their] home, illegal drugs in [their] home . . . which [the] prosecution will charge her with. . . ." The petitioner further testified that he did not want to proceed to trial because he believed his wife would go to jail as a result, and that his "children will end up in the foster care system." Although the petitioner made a bare assertion at the habeas trial that he would not have pleaded guilty if he had known that, by doing so, he would lose his right to appeal the court's competency decision, the court did not find the petitioner's testimony in this regard to be credible. See *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 357, 273 A.3d 680 (2022) ("[b]ecause it is the [habeas] court's function to weigh the evidence and determine credibility, we give great deference to its findings" (internal quotation marks omitted)).

On the basis of the foregoing, the petitioner's claims necessarily fail because he has not demonstrated that, but for his trial counsel's conduct, he would not have pleaded guilty. The petitioner, therefore, has failed to prove that he suffered prejudice under *Strickland*. Accordingly, we conclude that the court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] The petitioner was also charged with felony murder in violation of General Statutes § 53a-54c, assault in the first degree in violation of General Statutes § 53a-59, assault in the second degree in violation of General Statutes § 53a-60d, assault in the second degree on a person over sixty years old in violation of General Statutes § 53a-60b, possession of a pistol without a permit in violation of General Statutes (Rev. to 2005) § 53a-217c, and, two counts of burglary in the first degree in violation of General Statutes (Rev. to 2005) § 53a-101.

[3] General Statutes § 54-56d provides in relevant part: "(a) A defendant shall not be tried, convicted or sentenced while the defendant is not competent. . . . [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense. . . .

"(c) If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the

defendant's competency. . . ."

[4] In *Gilbert*, our Supreme Court identified six factors, adopted from *Wilson* v. *United States*, 391 F.2d 460 (D.C. Cir. 1968), to assist courts in determining the effect of amnesia on the trial's fairness: "(1) the extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer [separate and apart from his memory loss]; (2) the extent to which the amnesia affected the defendant's ability to testify on his own behalf [on matters other than the event that gave rise to his amnesia]; (3) the extent to which the evidence in the suit could be extrinsically reconstructed in view of the defendant's amnesia, including evidence relating to the crime itself as well as any reasonably possible alibi; (4) the extent to which the government assisted the defendant and his counsel in that reconstruction; (5) the strength of the prosecution's case, with the most important consideration pertaining to whether the government's case is such as to negate all reasonable hypotheses of innocence; and (6) any other facts and circumstances that would indicate whether or not the defendant had a fair trial." *State* v. *Gilbert*, supra, 229 Conn. 233.

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] At the habeas trial, Edgington testified that, prior to the plea hearing, he informed the petitioner that he faced a maximum exposure of 135 years of imprisonment if he was convicted at trial.

[7] The petitioner also asserted in his petition a violation of his right to due process. The habeas court concluded that the petitioner's due process claim was "inextricably interwoven with the petitioner's claim of ineffective assistance of counsel" and resultantly rejected the due process claim for the same reasons it rejected the ineffective assistance of counsel claim. The petitioner does not challenge the denial of his due process claim on appeal.

[8] The petitioner, Edgington, and the expert for the defense, Attorney John Drapp, testified at the hearing. Drapp testified as to how Edgington could have preserved the court's competency decision for appeal.

[9] "The petitioner testified that he would not have pleaded guilty if he had known that by doing so, he would lose his right to appeal the court's competency decision. The [habeas] court does not find the petitioner's testimony credible."

---